IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL ACTION |
| : | |
| AMIN A. RASHID, : | NO. 08-493 |
|       Defendant. : | |

MEMORANDUM OPINION

**RUFE, J.**                                                                                                                                                                     October 9, 2012

On July 12, 2011, the jury in this case found Defendant, Amin Rashid, guilty of nine counts of mail fraud in violation of 18 U.S.C. § 1341, and eight counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Defendant has filed a Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons that follow, the Motion will be denied.

**I. BACKGROUND**

Because the Court summarily denies Defendant's Motion for a New Trial, the Court will provide only the factual and procedural context necessary to explain it's reasoning.

The evidence at trial showed that for a period of about three years, Defendant operated an organization called The Center for Constitutional and Criminal Justice, Inc. ("the Center") using the title "Director of Legal and Political Affairs." Defendant would solicit business by sending letters to potential clients whose homes had been sold at sheriff's sales.[1] In exchange for a fee, which appears to have varied in accordance with the means of his clients, Defendant agreed to help clients prevent or reverse sheriff's sales, remain in their homes, and/or recover excess

---

[1] See, e.g., Gov't Ex. 1401.

proceeds of the sale of their homes. Defendant would require that clients give him a copy of their driver's license and sign a power of attorney ("POA") giving "Amin A. Rashid and/or The Center for Constitutional and Criminal Justice, Inc." permission to act as their attorney-in-fact for the purpose of reclaiming or redeeming their homes.[2]

Defendant would manipulate these documents by, for example, changing the name and address on the license but retaining the photograph, license number, and date of birth.[3] Defendant would then submit these fraudulent documents to City Line Abstract Company (the company hired by the City of Philadelphia to prepare a distribution policy regarding the payment of excess proceeds resulting from a sheriff's sale), and acquire unclaimed proceeds of sheriff's sales due to the individuals named in the manipulated document. These individuals, however, did not request that Defendant recover sale proceeds on their behalf and, in many instances, pre-deceased by many years the date on which Defendant represented that they had empowered him to recover the proceeds.[4]

The trial commenced in this case on June 29, 2011. After 6 days of testimony from nearly 40 witnesses, closing statements were made on July 11, 2011. The following morning, the jury returned a verdict of guilty on 9 of the 10 counts of mail fraud, and all 8 counts of identity theft. They found Defendant not guilty on count 10, mail fraud, and count 19, passing an altered postal

---

[2] See, e.g., Gov't Ex 1400.

[3] See, e.g., Gov't Ex. 1400, p.1 (Miriam Jackson's actual licence) and Gov't Ex. 901, p.4 (Miriam Jackson's license with the name "Ethel D. Phillips" and a different address).

[4] See, e.g., Gov't Ex. 906 (Ethel D. Phillips, who Defendant represented as having a license issued on February 24, 2004, passed away over 20 years earlier, in 1981).

money order. Defendant thereafter filed several post-trial motions[5] including the Motion for a New Trial now before the Court.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[6] Motions under Rule 33 are "not favored and should be granted sparingly and only in exceptional cases."[7] Exceptional cases are those in which errors that occurred during trial, either individually, or in combination, "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial."[8]

## III. Discussion

Defendant raises five arguments in support of his Motion for a New Trail. The Court will address each argument in turn.

**A.   The Court's Refusal To Take Judicial Notice That Defendant Did Not Continue to Assist Clients Once The Indictment Was Filed Because A Court Order Prevented Him From Doing So**

Trial was scheduled to commence in this case on June 28, 2011. However, because Defendant made several motions on the eve of trial, the Court excused the jury panel selected that day, postponing trial for one day to afford Defendant an additional day to prepare for trial,

---

[5] All motions have been resolved simultaneously by the Court by separate orders.

[6] Fed. R. Crim. P. 33(a).

[7] United States v. Silveus, 542 F.3d 993, 1005 (3d Cir. 2008) (internal quotation omitted).

[8] United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993) (quoting United States v. Hill, 976 F.2d 132, 145 (3d Cir. 1992)).

and held argument on the newly-filed motions.[9] One such motion Defendant filed on the eve of trial, which the Court addressed during the June 28, 2011 hearing, was Defendant's motion to admit a list of clients to whom Defendant claims he was forbidden to provide services.[10] Defendant argued that the Court was required to take judicial notice of the fact that he was prevented from assisting his clients once the indictment was filed in this case because the Honorable Anita B. Brody, to whom this case was initially assigned, issued a pre-trial release order forbidding him from contacting his clients who were alleged victims and potential witnesses.[11] Defendant asserted that this evidence was necessary to rebut the Government's contention that he performed no services for his clients; Defendant sought to establish that he could do nothing for his clients once the indictment was filed pursuant to the no-contact court order, and requested that the Court take judicial notice of this fact by admitting a list of his clients and instructing the jury to this effect.[12]

The Court denied the motion. The Court explained that while Defendant was permitted to introduce evidence about his reason for failing to provide services for his clients, Defendant's motivation for failing to assist his clients was not a fact of which the Court could take judicial notice.[13]

THE COURT: These are not facts that are capable of judicial notice. So, I can't

---

[9] See 6/28/2011 Trial Tr. 32.

[10] See Doc. No. 249; 6/28/2011 Trial Tr. 68.

[11] 6/28/2011 Trial Tr. 69-71.

[12] Id.

[13] 6/28/2011 Trial Tr. 72.

grant your motion in that regard.  What I want to do is clarify what you can do so that you don't think that you are not allowed to testify to this, because you are.  You can present evidence and documents and your own testimony and you can bring in any one of these entities or person . . . to present your case, but the Court cannot take judicial notice, understand?

. . .

MR. RASHID: I understand what you are saying, Your Honor.[14]

The Court's ruling was not an error.  Rule 201 of the Federal Rules of Evidence provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Here, Defendant's motivation for not providing services to his clients was subject to reasonable dispute and was therefore not the proper subject of judicial notice.  In fact, as the Government notes in its opposition to the Motion for a New Trial, Defendant continued to meet with clients after Judge Brody ordered that he refrain from doing so, and Defendant's bail was revoked as a result.[15]  Thus, to take judicial notice of Defendant's proffered reason for failing to assist his clients would conflict with the evidence of record in this case.

Moreover, even if the denial of Defendant's judicial notice request was an error, Defendant has not shown that this denial "had a substantial influence on the outcome of the trial," as required by Rule 33.[16]  The evidence presented at trial showed that Defendant defrauded some of his clients out of thousands of dollars <u>before</u> the indictment was filed in this case, and as the Court instructed Defendant, to the extent Defendant wished to present evidence regarding his

---

[14] 6/28/2011 Trial Tr. 73; <u>see also</u> Doc. No. 250.

[15] <u>See</u> Doc. No. 40.

[16] <u>Thornton</u>, 1 F.3d at 156 (quoting <u>Hill</u>, 976 F.2d at 145).

motivation for failing to provide services to clients after the indictment was filed, he was permitted to do so.[17] Any failure to introduce evidence to this effect lies with Defendant.

**B.    The Court's Denial Of Defendant's Motion To Suppress Evidence Obtained From Maurice Mander Through The Use Of The October 8, 2009 Grand Jury Subpoena**

Defendant has made several motions regarding "all things seized at 333 West Johnson Street, Philadelphia, Pennsylvania."[18] The first was a motion to suppress filed by Defendant on March 24, 2009,[19] which was the subject of a November 10, 2009 hearing before Judge Brody, and was denied by Order dated November 16, 2009.[20] The latest was the motion to suppress evidence obtained by grand jury subpoena which was filed on June 13, 2011,[21] and which the Court denied by Order dated June 24, 2011.[22] It is this June 13, 2011 motion to suppress which is the subject of Defendant's second argument in his Motion for a New Trial.

In its Order denying the June 13, 2011 Motion to Suppress the Court explained its reasons for denying the Motion:

> Rashid's Motion depends upon a distortion of this Court's on-the-record June 2, 2011 ruling, which conclusively resolved this issue. Rashid states that "the Court specifically found and the Government agreed that any use of Grand Jury Investigative Subpoenas after May 28, 2009 to obtain evidence for use in prosecuting the defendant is illegal. [Doc. No. 190 at 1.] Thus, Rashid claims

---

[17] 6/28/2011 Trial Tr. 73.

[18] See, e.g., Doc. Nos. 48, 100, 190, 231, 233, 246.

[19] Doc. No. 48.

[20] Doc. No. 100.

[21] Doc. No. 233.

[22] Doc No. 246.

that this Court ruled "that use of the Grand Jury Subpoena was 'illegal,' but Green's 'consent' made the seizure 'legal.'"

This is a gross mischaracterization of the Court's ruling. The Court *did not* hold that the post-May 28, 2009 subpoenas were illegal; rather, the Court found that: "The evidence before me said that [the postal inspectors] obtained consent from the prior owner and present owner, and this grand jury subpoena becomes a nullity in terms of whether or not they chose to call Mr. Green on June 25th or July 25th or whatever date the grand jury was meeting. It becomes a nullity because of the consent." [6/2/2011 Hr'g Tr. 102:2–9.] At no time has this court ruled that the Government illegally used the Grand Jury Subpoenas to prepare for trial. Nor does it believe that to be the case. The post-superseding indictment grand jury subpoena was issued as the "grand jury continued to investigate additional crimes, including but not limited to finding new victims of the defendant's fraudulent scheme and inquiring into his association with possible co-conspirator Michael Whitmer and various pawn shops." See Gov't.'s Combined Resp. to Def.'s Most Recent Pretrial Mots. [Doc. No. 240 at 2 ("Gov't.'s Resp.")]. In order to prevail on this Motion, Rashid must "demonstrate that the sole or dominant purpose of seeking the evidence post-indictment [was] to prepare for the pending trial." In re Grand Jury Proceedings, 632 F.2d 1033, 1041 (3d Cir. 1980). Rashid has not made any factual showing that "the grand jury's sole or dominant purpose for seeking enforcement of the subpoena is to continue, unlawfully to investigate him subsequent to his indictment." Id. In the absence of such a showing, "the grand jury proceedings are entitled to a presumption of lawfulness and regularity." Id. Thus, Rashid's motion has no merit.

In the Motion for a New Trial now before the Court, Defendant does present any new evidence or argument that causes the Court to question its prior holding. Defendant has failed to meet his burden of showing that the sole or dominant purpose of the post-indictment subpoena was to prepare for trial. In the absence of such a showing there is no cause to disrupt this Court's prior holding. Furthermore, even if the Court's ruling was an error, Defendant has not shown that any evidence obtained from the grand jury subpoena "had a substantial influence on the outcome of the trial," such that a new trial is warranted.[23]

---

[23] Thornton, 1 F.3d at 156 (quoting Hill, 976 F.2d at 145).

7

C.     **Prosecutorial Misconduct**

Defendant argues that the Court should grant him a new trial based on "prosecutorial misconduct." The Court summarily denies Defendant's assertion as frivolous. As the Government's Omnibus Response to Defendant's Post-Trial Motions details, there is ample evidence in the record to support assertions made by the Government in opening and closing statements.[24] Additionally, Defendant's repeated contentions that the Government introduced perjured testimony and improvidently expanded the scope of the Superseding Indictment are without merit and have been addressed by the Court in rulings on Defendant's other post-trial motions.[25]

D.     **Defendant's Contention That The Court's Jury Instructions Lowered The Burden of Proof And Broadened The Superseding Indictment**

Defendant asserts that the Court's instructions to the jury regarding the first (instruction 14) and third elements element of mail fraud (instruction 17), "lowered the Government's burden of proof . . . [and] unconstitutionally 'broadened' the superseding indictment."[26]

Instruction 14 which defined the first element of mail fraud—"scheme to defraud or to obtain money or property"—provided in relevant part as follows:

> The government is not required to prove every misrepresentation charged in the indictment. It is sufficient if the government proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud. However, you cannot convict the

---

[24] See Gov't's Omnibus Resp. to Def.'s Post-Trial Motions at 9-14.

[25] See Order denying Defendant's Motion to Reopen the Suppression and Order denying Defendant's Motion for Arrest of Judgment.

[26] Doc. No. 278 at 7.

>defendant unless all of you agree as to at least one of the material misrepresentations.[27]

This language is quoted directly from the Third Circuit Model Jury Instructions regarding the elements of mail fraud,[28] and does not lower the Government's burden of proof as Defendant contends.

During the charge conference, Defendant requested that the Court include an additional instruction about the use of "and" in the Superseding Indictment; he argued:

>[T]he use of a conjunctive "and" throughout the superseding indictment means that the grand jury has commanded that the government must prove both allegations connected by the conjunctive and in order to prove the charge set forth therein. . . . I'm referring to the superseding indictment, and for instance in paragraph four it says that the defendant presented to the sheriff and City Line fraudulent identification documents . . . . When it says, sheriff and City Line, it means them conjunctively.[29]

According to Defendant, the Government was required to prove that Defendant submitted fraudulent documents to both the Sheriff <u>and</u> City Line, and requested that the Court add an instruction to that effect. The Court denied his request, finding that such an instruction would confuse the jury in light of the above-quoted Third Circuit Model Jury Instruction, and explaining, once again, that the Government need not prove every allegation regarding the fraudulent activity stated in the indictment. The Court's decision not to include an additional instruction on this point was not an error and does not support a finding that the Court lowered the Government's burden of proof.

---

[27] 7/11/2011 Trial Tr. 133:20-134:3.

[28] Third Circuit Model Criminal Jury Instruction § 6.18.1341-1

[29] 7/11/2011 Trial Tr. 8-10.

With respect to the third element of mail fraud (Instruction 17), the Court charged the jury as follows:

> Now, the third element that the government must prove beyond a reasonable doubt is that in advancing, furthering, or carrying out the scheme, the defendant used the postal service, that is, the United States mails, or a private or commercial interstate carrier, or caused the Postal Service or a private or commercial interstate carrier to be used.
>
> Let's not be confused here. There's only one system of mail in this country, and this case only involves the mails in this country. So, we're talking about the United States Postal Service whenever you hear or deal with the mails, and as to private or commercial interstate carriers, you heard evidence of that on one count.
>
> The government is not required to prove that the defendant himself actually mailed anything or that he even intended that the mails would be used to further, or to advance, or to carry out the scheme.
>
> However, the government must prove beyond a reasonable doubt, that the postal service or a private or commercial interstate carrier were, in fact, used in some manner to further, or to advance, or to carry out the scheme to defraud. The government must also prove either that the defendant used the postal service, that is, the mails, or a private or commercial interstate carrier, or that the defendant knew the use of the postal service or a private or commercial interstate carrier would follow in the ordinary course of business or events, or that the defendant should reasonably have anticipated that the mails would be used.
>
> It is not necessary that the item mailed or sent by carrier was itself false or fraudulent or contained any false or fraudulent statement, representation, or promise, or contained any request for money or thing of value.
>
> However, the government must prove beyond a reasonable doubt that the use of the postal service or private or commercial interstate carrier in some way furthered, or advanced, or carried out the scheme.[30]

As with instruction 14, this charge is adapted from the Third Circuit's Model Jury Instructions[31] and does not lower the Government's burden of proof.

---

[30] 7/11/2011 Trial Tr. 137:6-138:20.

[31] See Third Circuit Model Criminal Jury Instruction § 6.18.1341-5.

To the extent Defendant submits that this instruction broadens the Superseding Indictment by redefining "mail" as "U.S. Mail" or mail delivered by the postal service, the Court has addressed this contention by separate order, ruling on Defendant's Motion for Arrest of Judgment.  <u>Defendant</u> requested that the Court include this language.[32]  The Court granted Defendant's request because the addition of "U.S." to mail did not change the meaning of the term mail, a point the Court explained in its instructions.  The addition of the term "U.S." to define mail did not broaden the Superseding Indictment as Defendant contends and does not lend support to Defendant's contention that he is entitled to a new trial.

### E.    The Government's Use Of Defendant's Handwriting Exemplars And Inspector Fitzpatrick's Testimony Regarding The Defendant's Handwriting

At trial, Postal Inspector Mary Fitzpatrick testified that over the course of her investigation into the fraudulent activities at issue in this case, which began in September or October of 2007, she became familiar with Defendant's handwriting.[33]  In early 2009, before the Superseding Indictment was filed in this case, Inspector Fitzpatrick took several handwriting samples from Defendant.[34]  Inspector Fitzpatrick testified that during her investigation she came to the conclusion that the fraudulent documents submitted to City Line were signed by Defendant based, in part, on her knowledge of Defendant's handwriting as it appeared in the exemplars.[35]

Defendant now argues that the taking and use of these exemplars was improper and that

---

[32] 7/7/2011 Trial Tr. 200.

[33] 7/6/2011 Trial Tr. 239.

[34] <u>See, e.g.</u>, Gov't Ex. 2401; 7/7/2011 Trial Tr. 40.

[35] <u>See, e.g.</u>, 7/7/2011 Trial Tr. 43-44.

Inspector Fitzpatrick should not have been permitted to testify about Defendant's handwriting because she was not "qualified" to testify as a handwriting expert and because she took the exemplars for the purposes of the litigation.[36]  Federal Rule of Evidence 901 allows <u>non-experts</u> to testify as to their opinion about handwriting based on a familiarity with the handwriting so long as this familiarity "was not acquired for the current litigation."[37]  Here, Defendant pressed this point several times during his cross-examination of Inspector Fitzpatrick, each time soliciting the same response—her familiarity with Defendant's handwriting ensued from her involvement in the investigation of Defendant's fraud.[38]  Thus, her opinion as a <u>non-expert</u> was admissible.

Again, Defendant is rehashing arguments, which he raised pretrial in his Fourth Motion in Limine,[39] and which the Court denied.[40]  Defendant raises no new grounds to support his contentions and the Court finds no reason to disturb its ruling.

---

[36] Doc. No. 278 at 8-9.

[37] <u>Id.</u>

[38] <u>See, e.g.</u>, 7/7/2011 Trial Tr. 117-18.

[39] Doc. No. 248.

[40] Doc. No. 250.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for a New Trial will be denied. Defendant has filed several post-trial motions, many of which the Court has addressed by separate order. Those which remain pending and have not been addressed by separate order have been rendered moot by the Court's denial of the other motions.[41]  These motions will be included in the attached order.

---

[41] See Defendant's Motion for Return of United States Passports (Doc. No. 303), Motion for Issuance of Certificate of Innocence (Doc. No. 304), and Motion for Bail (Doc. No. 309).